AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA A. Reinitz)                                USAO CW No. 25-165

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br><br>DAISHAUN (a/k/a DAISA) HUGHES-MURCHISON<br>*Defendant(s)* | Case No. 25-MJ-1601 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **June 21, 2025** in the county of **Philadelphia** in the **Eastern** District of **Pennsylvania**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1951(a) and 2 | Hobbs Act Robbery and aiding and abetting |
| 18 U.S.C. §§ 924(c) and 2 | Use of a firearm in furtherance of a violent crime and aiding and abetting |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

/s Kelsie Judd
*Complainant's signature*

Kelsie Judd, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed by telephone.

Date: July 31, 2025

Lynne A. Sitarski
Digitally signed by Lynne A. Sitarski
Date: 2025.07.31 17:20:59 -04'00'

*Judge's signature*

City and state: Philadelphia, Pennsylvania    Honorable Lynne A. Sitarski, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kelsie Judd, being duly sworn under oath, state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so since August 2020. I am currently assigned to the Philadelphia Division Violent Crimes Task Force (VCTF), which investigates violations of Federal law, to include robberies of banks, robberies of businesses that affect interstate commerce (also known as Hobbs Act robberies), kidnappings, and fugitives.

2. This affidavit is being submitted in support of a criminal complaint and arrest warrant charging DAISHAUN (a/k/a Daisha) HUGHES-MURCHISON[1] with violating Title 18, United States Code, Sections 1951(a) and 2 (Hobbs Act Robbery and aiding and abetting) and 924(c) and 2 (use of a firearm in furtherance of a violent crime and aiding and abetting).

3. As further described below, there is probable cause to believe that DAISHAUN (a/k/a Daisha) HUGHES-MURCHISON and two other individuals, identified as PERSON 1 and PERSON 2[2] executed a robbery of a Brink's armored truck on June 21, 2025.

**A. The Robbery of the Brinks Truck**

4. On Saturday, June 21, 2025, at approximately 8:05 a.m., Philadelphia Police Department Officers from the 24th District responded to a radio call for a "Robbery in Progress" at the Home Depot located at 2539 Castor Avenue, Philadelphia, Pennsylvania 19134. Upon arrival, 24th District Officers located the complainant, DS,[3] who is a driver for Brink's Inc

---

[1] Various documents available to law enforcement show HUGHES-MURCHISON's first name sometimes appearing as "Daisha" and sometimes appearing as "Daishaun." For example, his driver's license lists it as "Daisha," but his criminal history records show him as "Daishaun."
[2] PERSON 1 and PERSON 2 are known to law enforcement, but for the purposes of this document, their identities are being withheld.
[3] The identity of DS is known to law enforcement.

1

(Armored Truck). The complainant stated that while he was walking down the rear alley of Home Depot, off of the 3700 Block of Thompson Street, Philadelphia, he was approached from behind by two (2) males armed with AR-style rifles. The two (2) offenders forced DS to the ground, disarmed him of his Brink's Inc. issued firearm, and took his keys. According to DS, offender #1 stayed with DS while offender #2 gained access to the Brink's truck.

5. On June 21, 2025, immediately after the robbery, members of the Philadelphia Police Department East Detective Division (PPD-EDD) and the Philadelphia Police Department External Services/FBI Violent Crimes Task Force (PPD-FBI VCTF), and the Philadelphia Police Department Crimes Scene Unit processed the scene. DS was interviewed, and video surveillance in the immediate area was recovered. With the assistance of Brink's regional security, it was determined that approximately $2,025,000.00 in United States Currency was taken from inside the Brink's truck to include one (1) cellular scanner. The cellular scanner was recovered by law enforcement approximately 4 blocks from the scene of the robbery, and was broken when found, consistent with being thrown out of a car window.

6. Brink's has confirmed that the stolen money was owned by Brink's at the time it was taken. Brink's is a national cash transport company that delivers and picks up United States currency from a variety of stores and businesses in several states, and thus, affects interstate commerce.

7. FBI Special Agents contacted the Real Time Crime Center (RTCC) for any and all vehicles in the area of Aramingo Avenue and Castor Avenue at the time of the robbery. RTCC provided a black Hyundai Sonata with a Virginia temporary registration tag/license plate

2

***95U[4] traveling northbound on the 3700 block of Aramingo Avenue on June 21, 2025, at 8:04 a.m., which is consistent with the direction of travel that the offenders used after the robbery.

       8.      Brink's regional security provided the interior and exterior video from the Brink's truck. The video shows that DS parks and exits the side door of the Brink's truck at approximately 7:59 a.m. and heads towards the Home Depot alley. Shortly thereafter, a black Hyundai sedan is seen pulling behind the Brink's truck. One robber, identified here as offender #2, exits the rear passenger side of the Hyundai and is seen running towards the Home Depot alley. The other robber, identified herein as offender #1, exits from the driver's seat door. Both robbers appear to have AR-style rifles on them as they move. Offender #2 is observed on video surveillance wearing dark-colored cargo pants with a wide belt loop, a black sweatshirt with a tan/yellow strip at the bottom (possibly a shirt underneath the sweatshirt), a black mask with ski goggles, and a black hat. Surveillance shows offender #2 enter the truck at approximately 8:01 a.m. Once inside the truck, offender #2 opens the second door inside the truck with the key that was left inside the door. Offender #2 then uses the complainant's key fob to open the third door inside the truck that stores the cash. Once through the third door, offender #2 removes a large brown bag from his waistband, and starts to fill it with the cash that is inside the truck. Offender #2 then exits the Brink's truck. Offender #2 moves swiftly through the truck, showing familiarity with the various safety features within the truck, as well as where the driver's keys need to be used in order to access areas of the truck.

---

[4] The full temporary tag information is known to law enforcement but is redacted for purposes of this document.

9. The video shows that once outside of the Brink's truck, offender #1 and offender #2 got back into the Hyundai Sonata and fled the area traveling northbound on the 3700 block of Aramingo Avenue. They left DS Brink's-issued firearm in the alley near DS when they fled.

**B. Investigation of PERSON 2 and the Hyundai Sonata used by the robbers**

10. In the days following the robbery, law enforcement conducted a canvas in the area around the robbery to attempt to obtain video surveillance before and after the Brink's truck robbery. Law enforcement recovered video surveillance of the Hyundai Sonata used by the robbers to approach the Brink's truck with both the temporary tag, as seen at the time of the robbery, and with a Pennsylvania license plate, MWJ-5454, on June 21, 2025.

11. Law enforcement ran Pennsylvania registration MWJ-5454 through NCIC/PCIC which revealed that the Hyundai Sonata was a rented vehicle through Enterprise.

12. Law enforcement contacted an Enterprise legal representative who, subject to a subpoena, provided information on the Hyundai Sonata bearing Pennsylvania registration MWJ-5454, including the vehicle's vehicle identification number ("VIN"). The Enterprise legal representative informed law enforcement that the Hyundai Sonata was rented by an employee of Enterprise, PERSON 2. The rental agreement reflected that PERSON 2 provided his phone number (hereinafter PHONE 2) and his address. The address provided in the rental agreement was the legal address listen on PERSON 2's driver's license. PERSON 2 rented the vehicle on June 19, 2025, at 6:39 a.m. from the Enterprise Rent-A-Car located at 1 Arrivals Road, Philadelphia, and returned it on June 21, 2025, at 11:27 a.m., less than 4 hours after the robbery. Law enforcement later identified that PERSON 2 was an employee of Enterprise. Enterprise told law enforcement that PERSON 2 was scheduled to work on June 21, but did not report to work.

4

Enterprise has provided information to law enforcement that PERSON 2 last worked the day after the robbery, June 22, though he stayed for only 2 hours of his scheduled all-day shift and has not returned to work since.

13. Law enforcement reviewed video provided by Enterprise of PERSON 2 renting the Hyundai Sonata on June 19 and the return of the vehicle on June 21. When PERSON 2 rented the car on June 19, he was alone when completing the rental paperwork and left alone in the vehicle. On June 21, PERSON 2 was alone in the vehicle during the return of the vehicle. Video shows him exit the Enterprise parking lot, walk toward a silver Ford sedan, and enter the rear passenger seat. License plate readers and additional video recovered led investigators to identify this vehicle as a silver Ford Fusion, which is tied to HUGHES-MURCHISON, as discussed below.

14. Automated License Plate reader searches show that on the afternoon before the robbery, June 20, 2025, the Hyundai Sonata was captured near the northeast corner of 58th and Larchwood Avenue. This location is on the side street adjacent to Addison Street, which is approximately, 200 feet from the front door of PERSON 1.

**C. Investigation of PERSON 1**

15. PERSON 1 was a Brink's employee who was suspended and later terminated as the result of an internal theft investigation. Brink's provided PERSON 1's address to law enforcement as which was also listed on PERSON 1's driver's license. Brink's reported his phone number, PHONE 1. PHONE 1 was confirmed to be registered to PERSON 1 through records obtained by subpoena from Verizon. Brink's also provided information that PERSON 1

5

had been assigned to drive the truck that was robbed on two dates prior to the robbery, May 5 and June 3, 2025.

16. Brink's provided video of PERSON 1 in an armored truck during his employment with Brink's, which I have reviewed. When watching the video, PERSON 1 appears similar in build to the masked robber who entered the Brink's truck on June 21.

### D. Investigation of DAISHAUN (a/k/a Daisha) HUGHES-MURCHISON and silver Ford Fusion

17. During video review of recovered surveillance, law enforcement observed that on June 21, 2025, a silver Ford Fusion, Pennsylvania license plate/tag XXX-1684,[5] appeared to follow the Hyundai Sonata used in the robbery, as captured on the Philadelphia city camera located at Allen and Tioga. Tag reads captured the two vehicles in the same area approximately 90 minutes before the robbery occurred on June 21, 2025. The two cars were seen together again several hours after the robbery, near the Philadelphia airport.

18. A records check for Pennsylvania license plate XXX-1684, seen on the Ford Fusion, provided law enforcement with the VIN for the car, and the legal owner, who is not HUGHES-MURCHISON.[6] A records check of Philadelphia Police car stops (commonly known as a "75-48A") shows that there were nine (9) car stops between March 5, 2024, and June 1, 2025, where HUGHES-MURCHISON was operating the Ford Fusion. HUGHES-MURCHISON's address was listed on the police car stops. This address is also listed as the legal address on HUGHES-MURCHISON's driver's license. City camera tag readers show the Ford

---

[5] The full license plate is known to law enforcement but redacted for purposes of this document.
[6] As of the writing of this warrant, I am not aware of a connection between the legal owner and PERSON 1, PERSON 2, or HUGHES-MURCHISON.

6

Fusion parked on the same block as HUGHES-MURCHISON's address, with approximately 3 dozen hits in this area between August 2024 and the present. On July 8, 2025, law enforcement conducted surveillance in the area of the address and observed an individual that appears to be HUGHES-MURCHISON walking in the vicinity of the known address. Additional surveillance efforts captured HUGHES-MURCHISON entering and exiting the known address as well as the silver Ford Fusion parked on the street near the residence.

19. Open-Source records indicate the phone number 267-XXX-0187 (hereinafter HUGHES-MURCHISON PHONE) is utilized by HUGHES-MURCHISON. HUGHES-MURCHISON filed two motor vehicle insurance claims on July 17, 2022, and October 11, 2023. A review of these claims shows that HUGHES-MURCHISON listed a cell phone number on both claims as HUGHES-MURCHISON PHONE and listed the known residential address.

20. Additionally, on the day of the robbery, June 21, 2025, there was a tag read captured for the Ford Fusion at 10:41 a.m., showing it parked approximately two (2) blocks from the known address of HUGHES-MURCHISON. This time is approximately 2 and a half hours after the robbery, and less than an hour before the Hyundai Sonata was returned to Enterprise by PERSON 2, with the car of HUGHES-MURCHISON seen following behind the Sonata.

21. On June 25, 2025, an area search court order was served on T-Mobile, AT&T and Verizon. Subpoena returns for HUGHES-MURCHISON PHONE listed the subscriber of the phone as "Danielle Moore" with an address on the 700 block of Kohn Street, Norristown, Pennsylvania. Open-source records indicate this is an historical address for HUGHES-MURCHISON. Additionally, the subscriber information revealed the International Mobile Subscriber Identity (IMSI), a unique number that identifies a mobile phone subscriber on a

7

cellular network related to the phone. That IMSI was listed on the area search warrant returns as an IMSI present in the location of the robbery at the time the robbery occurred.

### E. Currently known phone communications

22. Legal process was obtained for phone records for PHONE 1. The subscriber of PHONE 1 was listed as PERSON 1 with an address on the 5700 block of Addison Street, Philadelphia, Pennsylvania, which is in West Philadelphia. This address is consistent with the employment information provided by Brink's. Below is a summary of PERSON 1's call detail records around the time of the robbery:

    a. On June 21, 2025, at approximately 8:53 a.m., less than an hour after the robbery, PHONE 1 received a call from HUGHES-MURCHISON PHONE that was not answered and was forwarded to voicemail. Per phone records received for PHONE 1 this call was immediately forwarded to voicemail indicating PHONE 1 was either off or in airplane mode at this time.

    b. On June 21, 2025, at approximately 9:07 a.m., PHONE 1 received a call from PHONE 2 that was not answered and was forwarded to voicemail.

    c. On June 21, 2025, at approximately 10:15 a.m., PHONE 1 called HUGHES-MURCHISON PHONE. This call was not answered.

    d. On June 21, 2025, at approximately 10:15 a.m., PHONE 1 called HUGHES-MURCHISON PHONE for a 17 second phone call.

23. Additionally, the following cell site location information is relevant to this affidavit:

a. On June 20, 2025, at approximately 8:01 p.m., the location of PHONE 2 and PHONE 1 are consistent with being in the same location, and at 8:10 p.m. location data indicated PHONE 2 and PHONE 1 are still together.

b. On June 21, 2025, at approximately 5:35 a.m., PHONE 2 contacts PHONE 1, but location data indicates the two phones are at separate locations.

c. On June 21, 2025, between 5:38 a.m. and 9:30 a.m. there is no location data available for PHONE 1, indicating that during this time frame either the phone was off or in airplane mode. I know from my training and experience that this is often used as a tactic by offenders during the commission of a crime because they are aware that law enforcement is capable of analyzing cell site location information so they deactivate their cell phones to attempt to disguise their location at the time a crime is committed.

d. On June 21, 2025, at approximately 9:02 a.m., PHONE 2 makes an outgoing call to HUGHES-MURCHISON PHONE, and then at approximately 9:07 a.m., PHONE 2 makes an outgoing call to PHONE 1. Per phone records received for PHONE 1, the call was immediately forwarded to voicemail indicating PHONE 1 was either off or in airplane mode during this time period.

e. On June 21, 2025, at approximately 10:38 a.m., location data shows PHONE 2 and PHONE 1 in the same general area.

f. On June 21, 2025, at approximately 11:36 a.m., location data shows PHONE 2 and PHONE 1 in the area of the Philadelphia Airport which is consistent with the time that PERSON 2 returned the Sonata to Enterprise. As stated

9

above, HUGHES-MURCHISON's car was seen on video in this area at this time.

24. An analysis conducted on the phone records for PHONE 1, PHONE 2 and HUGHES-MURCHISON PHONE, was conducted to determine communication patterns between the three subjects. Below is a summary of that analysis:

    a. In the time period of June 1, 2025, through June 19, 2025, PHONE 1 and PHONE 2 have approximately 15 completed calls with durations longer than 5 seconds.

    b. Between June 20, 2025, and June 21, 2025, the day before and the day of the robbery, PHONE 1 and PHONE 2 have a notable increased call frequency with approximately 13 completed calls with durations longer than 5 seconds in just two days.

    c. In the time period of June 22, 2025, through July 15, 2025, PHONE 1 and PHONE 2 have approximately 61 completed calls with durations over 5 seconds, a notable increase in frequency from the communication patterns prior to the robbery.

    d. In the time period of June 1, 2025 (the first date of records obtained for PHONE 1) through June 20, 2025, there was no contact between PHONE 1 and HUGHES-MURCHISON PHONE.

    e. On June 21, 2025, at approximately 8:53 a.m., PHONE 1 connected to HUGHES-MURCHISON PHONE with a duration of 17 seconds. Per PHONE 1 records, the call was immediately forwarded to voicemail,

indicating PHONE 1 was either off or in airplane mode during this time period.

 f.  Between July 13, 2025, and July 15, 2025, PHONE 1 and HUGHES-MURCHISON PHONE have several attempted calls and two completed calls.

 g.  In the time period of June 1, 2025, through June 19, 2025, HUGHES-MURCHISON PHONE and PHONE 1 have approximately 28 completed calls with durations longer than 5 seconds.

 h.  Between June 20, 2025, and June 21, 2025, the day before and the day of the robbery, HUGHES-MURCHISON PHONE and PHONE 1 have a notable increased call frequency with approximately 14 completed calls with durations longer than 5 seconds in just two days.

 i.  In the time period of June 22, 2025, through July 15, 2025, HUGHES-MURCHISON PHONE and PHONE 1 have approximately 56 completed calls with durations over 5 seconds, a notable increase in frequency from the communication patterns prior to the robbery.

25.  The analysis indicated PERSON 2 had previous connections to both PERSON 1 and HUGHES-MURCHISON. The day of robbery was the first instance of PERSON 1 and HUGHES-MURCHISON communicating, and they have continued communication in the month following the robbery, suggesting their relationship to PERSON 2 and the commission of the crime was the foundation for PERSON 1 and HUGHES-MURCHISON to be connected.

26.  I believe, based on the circumstances described herein, there is probable cause to charge DAISHAUN (a/k/a Daisha) HUGHES-MURCHISON with the robbery of a Brink's truck

on June 21, 2025, in violation of Title 18, United States Code, §§ 1951(a) and 2 (Hobbs Act Robbery and aiding and abetting) and 924(c) and 2 (use of a firearm in furtherance of a violent crime and aiding and abetting).

    /s Kelsie Judd
Kelsie Judd
Special Agent
Federal Bureau of Investigation

Sworn to before me
this __31st___ day
of July, 2025

**Lynne A. Sitarski**
Digitally signed by Lynne A. Sitarski
Date: 2025.07.31 17:22:05 -04'00'

HONORABLE LYNNE A. SITARSKI
*United States Magistrate Judge*